**CHICKASHA COTTON OIL CO. v. CHAPMAN et al.***

(Circuit Court of Appeals, Fifth Circuit. February 6, 1925. Rehearing Denied March 11, 1925.)

No. 4225.

**1. Appeal and error ⚖️154(4)—Defendants, voluntarily entering remittitur, precluded from seeking review by writ of error.**

Defendants, voluntarily entering remittitur in compliance with lower court's suggestion, rather than have plaintiffs' motion for new trial allowed, were precluded from seeking review by writ of error.

**2. Sales ⚖️416(1)—Exclusion of evidence that oil mills were dealing in each other's products in subsequent seasons held not error.**

In action between owners of oil mills for breach of contract to purchase oil, it was not error to exclude evidence that other mills dealt in products of each other during seasons subsequent to season in which transaction in controversy occurred.

**3. Arbitration and award ⚖️85(4)—Evidence tending to show partiality of arbitrators held sufficient to warrant submission to jury on issue whether award was binding.**

Where evidence tended to show that members of arbitration committee of association were interested in matter before them, and showed partiality in excluding evidence, evidence was sufficient to warrant submission to jury on issue whether award was binding.

**4. Partnership ⚖️131—Instruction as to partnership's liability for contracts made by managing partner held correct.**

Instruction that, though partners had no authority to bind partnership by contracts outside partnership business, if partnership was carrying on different kinds of business, and managing partner was allowed to make contracts in reference thereto, contracts were binding, even if not apparently needed to carry on business, *held* correct.

*Certiorari denied 45 S. Ct. 636, 69 L. Ed. ——.

**5. Partnership ⚖️131—Instruction as to authority of managing partner to submit controversy to arbitration held correct.**

Instruction that partnership would not be liable on arbitration agreement made by one partner, but if such partner were permitted to manage business by other partners, with knowledge that partnership was member of association which required its members to arbitrate their differences, he was authorized to submit controversy with another member to arbitration, *held* correct.

**6. Gaming ⚖️14—Instruction that, if contract did not contemplate delivery, neither seller nor buyer could recover thereunder, held correct.**

Instruction that, if sale contract did not contemplate delivery, but merely a settlement of differences between contract price and market price on date of delivery, contract was illegal, and neither party could recover thereunder, *held* correct; such contract being a gambling wager.

In Error and on Cross-Writ of Error to the District Court of the United States for the Northern District of Texas; William H. Atwell, Judge.

Action by the Chickasha Cotton Oil Company against Homer N. Chapman and others, wherein defendants brought cross-action. Judgment was rendered for defendants on plaintiffs' action, and for defendants on their cross-action, plaintiff's motion for new trial was overruled on condition that defendant file remittitur, and both parties bring error. Affirmed.

M. M. Crane and Henry C. Coke, both of Dallas, Tex. (Coke & Coke and Crane & Crane, all of Dallas, Tex., on the brief), for Chickasha Cotton Oil Co.

Joe A. Worsham, A. S. Rollins, and J. M. Burford, all of Dallas, Tex. (J. L. Gammon, of Waxahachie, Tex., and Beall, Worsham, Rollins, Burford & Ryburn, of Dallas, Tex., on the brief), for Chapman and others.

Before WALKER and BRYAN, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge. Plaintiff, an Oklahoma corporation, domiciled at Chickasha, said state, sued the defendants, as members of an alleged partnership, styled the Planters' Cotton Oil Company, located in the City of Waxahachie, Tex., for damages alleged to have been sustained by the breach of a contract to purchase 20 tanks, of 60,000 pounds each, of refined cotton seed oil. It alleged that the oil was sold at a price of 18 cents per pound for delivery in July, 1920, but that, upon the defendants' refusal to accept, the same was resold at the best

obtainable price of 11.6 cents, and that petitioner was thereby damaged to the extent of the decline in price and expenses incident to making the subsequent sale, etc.

Plaintiff further alleged that, after the resale of the oil, the matter was submitted to arbitrators, as required by the rules and regulations of the Interstate Cotton Seed Crushers' Association, of which both plaintiff and defendants were members; that the arbitration committee of said association, acting within said rules and regulations, had heard the parties and decided the cause in its favor. Wherefore plaintiff prayed that the award of the arbitrators be enforced, and that it have judgment for the sum allowed, and, in the alternative, if for any reason such award were held not binding, then that it recover of defendants its damages as alleged.

Defendants denied that they were partners, that the broker alleged to have made the sale had any authority so to do, or that H. C. McCarter, manager of the Planters' Cotton Oil Company, was authorized to bind them, either in making the alleged contract or in submitting the controversy to arbitration. Defendants also pleaded the prescription of two years in bar of plaintiff's demand. They further averred that the transaction was a future gambling scheme, with no intention on the part of the purported seller to deliver, or of the said McCarter to receive, said oil, but that the matter should be settled upon the basis of the market at the time of performance, and that therefore they were not bound by either the alleged contract or the arbitration settlement.

Further, in the alternative, they averred that, if it should be found that said contract was enforceable, then the award of the arbitrators was without effect, for the reason that the rules of said association for arbitration attempted to deprive the courts of jurisdiction, and that the machinery and procedure therein provided prevented the parties from having a fair and just hearing of their differences; that the said arbitration committee was illegally constituted, and composed of improper persons, who had an interest in the subject-matter before them, and was biased and prejudiced in favor of the plaintiff; that it considered evidence on behalf of plaintiff not permitted by the rules of the association, and refused to receive legal proof of defendants.

They also averred that the pretended claim of plaintiff that it had oil for delivery at Gretna, La., was untrue, and merely a fraudulent scheme for making it appear that defendants had refused to receive it under the terms of the alleged contract, in order to lay the basis of a claim for breach of contract; further, that the pretended sale of said oil through the Oklahoma Cotton Products Trading Company was fraudulent and illegal, because rule 32 of the Interstate Cotton Seed Crushers' Association requires that such broker shall be disinterested; whereas, in truth and in fact, the said Oklahoma Cotton Products Trading Company was the agent of the plaintiff, owned and controlled by it or its officers, and that the pretended sale was one "by itself to itself" contrary to law and good morals; that there was never any agreement as to the issue to be arbitrated, but that McCarter, purporting to act for defendants, filed a statement setting up certain issues, whereas those claimed by plaintiff were entirely different, and omitted important questions relied upon by McCarter, all of which was in violation of the said rules, and served to divest the said committee of proper jurisdiction for their determination; further, that the said committee refused to receive necessary and proper evidence bearing upon defendants' side of the case, consisting of the testimony of certain important witnesses, who would not voluntarily appear before the committee, but would furnish their testimony in documentary form, in compliance with the rules of said association, if permitted; that, notwithstanding its refusal to receive such proof, the chairman of said committee, of his own motion, went out and sought evidence on behalf of plaintiff, not in writing, as required by the rules, but oral and unsworn, which was used and considered in determining said cause, to the great injury and prejudice of defendants, all of which was arbitrary, partial, and unfair.

Then, by way of cross-action, defendants averred that, in event the defenses set up by them against plaintiff's demands were not good, and the court should find that the award of the arbitrators was binding, the plaintiff was indebted unto defendants in the sum of $54,000, with interest from May 24, 1924, as for money had and received for its use and benefit, which was paid to plaintiff in consideration of the postponing of delivery of 20 tanks of oil from May to July delivery, and that, plaintiff having failed and refused to deliver said oil, according to agreement, notwithstanding repeated demand, defendants were entitled to recover the said sum, together with damages. Defendants further claimed in reconvention or cross-action the sum of $32,940.70 as the amount of their loss resulting from the failure to

deliver 5 cars of oil, contracted for in January to be delivered in June, which oil was not up to contract requirements, and was sold by defendants for account of plaintiff, with a resultant loss of said sum.

Defendants prayed that plaintiff's demands be rejected, and that they have judgment on their cross-claim for $100,000. The cause was tried before a jury, which denied the claims of plaintiff, and found for defendants in reconvention in the sum of $1,-483.63. The motion of plaintiff for new trial was overruled, upon condition that defendants should enter a remittitur of the judgment in their favor, which was voluntarily done. Both sides have prosecuted writs of error to this court.

[1] The writ of error of the defendants must be dismissed, for the reason that by entering the remittitur without protest and in compliance with the suggestion of the lower court, rather than have the motion of plaintiff for new trial allowed, they thereby acquiesced in that ruling and precluded themselves from seeking a review at the hands of this court. It is not consistent to say to the lower court that "I will surrender the judgment in my favor, if you will not allow the plaintiff to submit its claims to another jury," and then to attempt to have an appellate court hold that it is entitled to more than the first jury awarded. The voluntary entering of the remittitur was in effect an admission that nothing was due on the cross-action or reconventional demand.

[2] Plaintiff relies upon nine assignments of error which we take up in their order as follows:

In its assignments Nos. 1 to 4, inclusive, it complains of the refusal of the court to allow it to prove by the depositions of Carl Eichenberg and others that other cotton seed oil mills were dealing generally in the products of each other during the season of 1920-1921 and that defendant during 1921-1922 was also dealing in the same products. This testimony was objected to by defendants upon the ground that such sales were made after the season of 1919-1920, in which the present controversy arose, had closed, and that plaintiff could not, therefore, have relied upon them. A full investigation along these lines for the season of 1919-1920 was permitted, and we can see no error in the court's refusing to go further into such matters, which had happened long after the season in question had closed; besides, what other concerns were doing was too remote to have any direct bearing upon the conduct of defendants.

4 F.(2d)—21

The court permitted a very wide latitude to plaintiff in showing the course of dealing of the Planters' Cotton Oil Company, through its manager, McCarter, and otherwise, for the purpose of sustaining the allegations of its petition of knowledge and acquiescence therein by the other partners in the transactions of their manager. In fact, in its charge to the jury, the court instructed them that the proof showed defendants were partners, and the questions for them to decide were as to whether the contract sued upon was within the scope of defendants' business; and, secondly, if not, whether the evidence, which was conflicting, established the fact that the other partners had consented to that character of business. We find no error in the ruling complained of.

[3] The fifth assignment is directed to the refusal of the court to give a peremptory instruction in favor of plaintiff for judgment upon the award of the arbitrators. There was evidence tending to show that some of the members of the committee of arbitration were interested in the outcome of the matter before them, and that they acted with partiality in refusing to receive evidence bearing upon the claims of defendants, and, if the jury believed this to be true, then, as instructed by the court, the defendants were not bound by the award. We shall not go into a detailed discussion of this evidence, but find it sufficient to say that the issue was one which was properly submitted to the jury.

[4] In its sixth assignment plaintiff complains of the special instruction on the question of whether or not the defendants were bound by the acts of their manager, McCarter, which charge we quote as follows:

"Second. I instruct you that, even though persons may be partners, such partners have no authority to bind the partnership by contract outside of the business of the partnership. In this connection, however, I instruct you that, if there be no certainty as to what business the partnership was engaged in carrying on, and if it appears that the partnership was in reality engaged in carrying on different sorts of business, and that the partners were allowing one of their number to make contracts with reference to such different sorts of business, and they were accepting the profits therefrom when such accrued (and paying the losses therefrom, when such accrued), then and in that event you would be justified in finding that all of such sorts of business so carried on was and were in fact the business in which the partnership was engaged. Therefore, if

you find and believe that the managing partner, McCarter, made contracts for refined oil, for its purchase and sale, which was apparently not needed in the conduct of the crude oil mill at Waxahachie, and that such trades by the said McCarter were carried on with the plaintiff and others, and the partnership shared the profits, if any were made in such trades, and paid the losses, if any were made in such trades, and if there was no concealment of such trades McCarter was carrying on with the plaintiff and others, by the said McCarter from his partners, and such trades were regularly entered in the books of such partnership, then and in that event it would be your duty to find that the contracts declared upon by the plaintiff herein were made with the authority of the defendants herein, and were binding on them and each of them."

We think this charge correctly states the law. There was evidence which, if believed, would have supported defendants' contention, and the issue was therefore properly submitted to the jury.

[5] Assignment No. 7 assails the charge of the court upon the question of the authority of the managing partner to agree to arbitration. The charge as given was as follows:

"Third. I charge you that the right to agree to an arbitration by one partner for his copartners does not arise from the relation of partnership, and before one's copartners could be bounden by an agreement made by him to arbitrate a business matter relating to the partnership business there would have to be acquiescence therein or authority therefor from the copartners. I charge you in this connection, however, that if the defendants in this case, partners, as I have instructed you, turned their business over to their copartner, McCarter, to be run by him, in the name of the Planters' Cotton Oil Company, with the knowledge that such Planters' Cotton Oil Company would become and was in fact a member of the Interstate Cotton Seed Crushers' Association, which association worked under a set of rules requiring arbitration of differences arising between its members, then and in that event I instruct you that it would be your duty to find that such partner, McCarter, was authorized to make the arbitration

agreement which he (McCarter) did make in this case, and his partners, the defendants herein, would be bounden thereby."

We think it also correctly states the law, and in view of the conflict of evidence upon the matter, the question of fact was properly submitted to the jury.

Assignment No. 8 is also directed at the charge of the court upon the question of the validity of the award of the arbitrators, and what we have said with regard to assignment No. 5 is equally applicable in this instance. The court simply submitted the question to the jury, and, there being sufficient evidence, if believed, to establish its unfairness, there was no error in putting the issue to the jury.

[6] Assignment No. 9 complains of the following special charge, given at the request of defendants, to wit:

"In this case, if you believe from the evidence that, at the time the contracts introduced before you were made, the Chickasha Cotton Oil Company, seller, and Planters' Cotton Oil Company, acting by H. C. McCarter, buyer, did not contemplate an actual delivery of the oil therein described on the date of delivery, but contemplated a settlement on the basis of the difference between the contract price and the market price on date of delivery, then you are instructed that the contracts were illegal, and that the awards based thereon are likewise illegal, and unenforceable as to either party hereto; and, if you so find, you are instructed that the plaintiff cannot recover against the defendant in this case in any amount, and that the defendant cannot recover on its cross-action against the plaintiff in any amount, and you will so say by your verdict."

There was also evidence tending to show that the several transactions between plaintiff and defendants were not made with a bona fide intention to actually deliver the oil, and the court therefore likewise correctly submitted the point to the jury. If it found there was no intention to deliver at the time of making the contract, the stipulation fell within the category of a gambling wager and was not enforceable in law. Hyman & Co. v. Hay (C. C. A.) 277 F. 898; 27 C. J. 1053 et seq.

Finding no errors upon the record, the judgment appealed from is affirmed.